case, Lindsay v. Denver Public Schools, 22-1408. Good morning, Your Honor. May it please the court, my name is Reid Allison, along with Daryl Kilmer. I represent Plaintiff Appellant Barb Lindsay. Barb Lindsay was an indisputably successful Director of Workforce Development and Career Services at Emily Griffith Technical College. In the beginning of 2019, in March, she received a merit-based raise, a substantial one. In April, she was entrusted to do a substantial part of looking for the next Executive Director of Emily Griffith Technical College, that is, the new head of the college and who would have been the next level above Barb Lindsay's position. Ms. Lindsay was then fired in July. If that chronology seems abrupt, it was. Ms. Lindsay certainly felt that way. What had changed in between March and April of 2019 and July of 2019 is that Ms. Lindsay had objected to racist comments that were made during the hiring process for the Executive Director. One of her colleagues, Tisha Lee, was also going out for this Executive Director job. She did not get it, but during a panel debrief, there were racist comments made. Lee was a colleague at the time, did you say? Yes. Ms. Lee was also, so the director-level position, I believe they're now called Vice Presidents, but it's the level right below Executive Director. Tisha Lee was one of the other directors. I believe there are four or five of those total. So Barb Lindsay objected during the panel debrief, and then once word got around that not only had Ms. Lee not been considered for the job, even though she'd been ranked as one of the two finalists and been initially invited to a panelist interview, a finalist interview, Barb Lindsay then told Tisha Lee about these statements, and Tisha Lee then used them to found a charge of discrimination against Denver Public Schools, which is the entity that Emily Griffith Technical College is a part of. Isn't the whole issue here whether any decision maker knew about this? Yes, Your Honor. That is the issue, the district court, so page 13 of the district court's order is essentially two block quotes from affidavits that were signed by Stephanie Donner, who was selected as the Executive Director through that process, and a woman last name Caldwell, who was an HR official who undertook- And everyone involved in the decision, the fire, denied knowing that she had told Ms. Lee. Yes, that's correct. So what you have to show is sufficient circumstantial evidence to overcome summary judgment. Yes, Your Honor. That's the issue before us. Am I missing something else? No, that's exactly right. It's our position that we didn't do that. It's just that the district court either waved away our circumstantial evidence or ignored it or misinterpreted it. So as to the prima facie case about knowledge, these decision makers having knowledge, we have the evidence that Stephanie Donner, when she started the job from essentially day one, was hostile to Barb Lindsey. Barb Lindsey testified that she had interacted with Stephanie Donner before and had met her plenty of times and everything had been perfectly fine. Counsel, may I interrupt you before you discuss the evidence that you're relying on and the inferences and so forth? I just want to make sure I understand the legal framework a little bit better. So we're in the third element here, right? The causal connection between the protected activity and the adverse action, right? And so for purposes of satisfying that causal connection element, we need to know whether the individual who took the adverse action knew of the protected activity, correct? Yes. And I wasn't sure in your briefing whether that was something that is undisputed in this case of who precisely took the adverse action? So that actually goes to our pretext point, but essentially some of the decision makers have pointed the finger at other people and said, oh, it wasn't my decision. The truth is that the termination letter was signed by Stephanie Donner. And that's who we're looking at, right? There's not some sort of collective knowledge theory that we import here when we're looking at causation. We're looking at the individual decision maker, which you agree is Ms. Donner, and whether she had the knowledge of the protected activity when she took the adverse action. Is that a fair understanding of the law? I believe so, Your Honor, although we also have claims against DPS, and it is also clear from circumstantial evidence that DPS legal department and HR were aware of the charge and would have been able to know who it was that provided Ms. Lee with the information. But that evidence in your theory is relevant only insofar as that knowledge you think would have been transmitted to Donner, is that correct? Yes, or when I was talking, I was answering the question before about fingers being pointed various ways. So Stephanie Donner signed the termination, it's her decision. She testified that she relied on Caldwell, the HR professional. Caldwell testified that DPS legal made the decision. So everyone is disclaiming responsibility for the action, but Donner is the one who signed it, and DPS legal had reason to know all of this, and there's some indication that they told people to do X, Y, or Z. What precisely is the circumstantial evidence that you're relying on to support that DPS legal had knowledge that's relevant to your claim? So the first charge that T.C. Lee filed was in April of 2019. By the time Stephanie Donner starts as executive director, it's the middle of June, and Barber and T.C. gets fired at the end of July 2019. So the circumstantial evidence we've got is generally the way EEOC and CCRD charges work, because they get filed, and then within a couple of weeks, they're sent to the employer who is running the agency. Where in the record does it show what DPS legal's obligations are with respect to this type of charge? Or even a legal citation? What I'm struggling with is trying to understand how we are to infer from the circumstantial evidence before the district court that DPS legal had the knowledge here in this sort of pointing environment that you're describing. So some of that goes to the timing of everything else, as well as the pretextual reasons. The employer is given the opportunity to explain why they're firing someone, and the best they can come up with is three, obviously, pretextual reasons. So that leads you to think, why did they actually do the thing? And there's an inference there that they knew that Barber Lindsey was T.C. Lee's essentially main witness for her charge, and they were concerned about T.C. Lee's charge. Well, didn't the district court say there's nothing in the record to show that the legal department even knew about the EEOC charge, the EEOC complaint? The district court did say that. It hadn't really been disputed up to that point, because of the way charges work. As I was prepping for this, unfortunately, I'll have to supplement the record, and everyone will have the time to reply, but the employer position statement was filed June 17th, 2019, to T.C. Lee's initial charge. That's not in the record? It's not currently, because it was... It wasn't in the district court record? It wasn't, because again, it wasn't... Well, it was in the district court record. I don't think we should take a look at that. We're limited toward the record, are we not? It was never disputed in the district court, so we never had... That's an argument you can make, but I don't think you can supplement the record with new evidence to support your opposition to the motion for summary judgment. If it wasn't in the district court record... Then we would fall back on... That it wasn't disputed. That it wasn't disputed, that it's... Did you ever say it? Did anyone ever say it, and there was no response to it? What basis do you have for saying it was undisputed? Undisputed in your own mind, or on the record? No, it was just not... So in motion for summary judgment, you've got their facts, our facts. We didn't fight over that fact, and there's a reason for that. It's because... Well, you never stated it as an undisputed fact in response to the motion for summary judgment? No, that's true, Your Honor. Okay. Well, as far as the district court's rationale, which was to grant summary judgment on the third causation element, prima facie case, what you really have in support, and it's very specific, is the affidavit of Ms. Donner, who said, I was the one who terminated her. She goes through all the... How it happened, what she relied on, the investigation she relied on by HR. She says she did so on July 31st, and that she said she did not know... She very specifically says she did not know that Lindsey had provided information to Lee, that Lee used to file discrimination charges, and she did not learn of it until August or September. She's very specific about when she learned of it and how she learned of it. There's a whole paragraph about that. So your evidence has got to... Your circumstantial evidence has got to address that somehow. Why can we assume that either this was a sham affidavit or essentially that she was lying here? I don't think you have to assume. Well, not assume, but why can we infer that? And that's really what you've got to show us, because she's very specific that she made the decision and she lacked knowledge, and she's very specific about when she gained the knowledge. Yes, she denied wrongdoing. We have circumstantial evidence that a jury could take as... And what is that? Other than the legal department may have had her charges, which we just talked about, and doesn't seem to be helping you much. What else is there? The circumstantial evidence is that immediately when Donner started, she was hostile to Ms. Lindsey for no other apparent reason. The district court basically found that based on a number of affidavits that Ms. Donner was what we call an equal opportunity harasser. She was not very nice to anybody, and lots and lots of people, including people at her level, didn't like her and had a lot of trouble with her.  So how does that get you there, that she didn't like? The difference with Ms. Lindsey is that she worked with Defendant Donner for about six weeks, and two of those weeks, Defendant Donner was on vacation. At the end of those six weeks, Barbara Lindsey was fired for three pretextual grounds. She was fired for misusing funds. That didn't happen. She was fired for... A former employee alleged that she was racist. That was unfounded. Well, that's her take on it, but you've got to show... Well, now you're going to pretext, and I guess I'm still trying to figure out why we can assume that she was lying when she said she didn't know. So the prima facie case is supposed to be a not onerous burden, to quote some cases. A very common way to do it is inference from mistreatment by a boss and temporal proximity. The district court looked at temporal proximity wrong, saying it was three months when... It was more complicated than that. Defendant Donner didn't start until the middle of those three months. As I said, they worked together. She couldn't have fired Barb in the first six weeks. Does the temporal proximity matter here without knowledge? So in the absence of knowledge of the protected activity, you can't just rely on the sort of temporal proximity between the protected activity and the adverse action, right? I mean, you need something more. I don't believe that's right, Your Honor. You can just draw an inference simply from the time? Yes, again, that their denial of wrongdoing, that they're not being truthful about that. Our circumstantial evidence shows behavior that doesn't match up with any other great explanation, and then Barb is fired on grounds that are transparently pretext. So that can lead to the inference that maybe, and a jury can look at this and think, hey, I don't believe you when you say that. And that's even without any knowledge, any circumstantial evidence or otherwise, of knowledge by the decision maker of the protected activity. So the trouble here is that we're presuming that the defendant saying they didn't have knowledge means that they didn't have knowledge. Well, no, we're looking for evidence that would counter that, that you would provide. And the evidence that counters that is the way the defendant's behaved, that lacks other explanation. And so the Strupe v. United case is good for this when you're looking at motivation and pretext and purely circumstantial evidence as well, and I'm going to try to reserve ten seconds. I'm going to go back to one of my very first questions to make sure I'm understanding. Your case depends on knowledge by Donner of the protected activity. Am I correct about that? You're proving the knowledge through circumstantial evidence, you think, but your case depends on that element being established. Is that right? Ultimately, yes, Your Honor. Okay. I'll tell you why I've been pursuing this. You're not raising a cat's paw argument then. I'm not sure if you're familiar with the term. I've heard it enough, but you know what I'm talking about. I do, Your Honor. You're not making a cat's paw argument. We haven't. Okay. We haven't made that argument.  Thank you. Good morning. May it please the Court. I'm Holly Ortiz on behalf of Appellee's Denver Public School and Stephanie Donner. This is a retaliation case in which the district court's grant of summary judgment in favor of the school district and Ms. Donner as an issue, and as this court has already noted, there is one issue at play here, and that's knowledge or lack thereof of Ms. Lindsay's protected activity. By Donner. By Donner. Correct. By Donner. They could have argued somebody else had knowledge, and that person's actions influenced Donner to decide, to make the decision, but that's not their argument. That is not their argument, nor could they make that argument, because the undisputed evidence is not only did Donner not know, none of the other individuals, Caldwell who investigated the complaint, there's no evidence that district legal knew anything about the charges. There's no evidence that anybody in the chain knew about the alleged protected activity. Well, I'm not sure that you could make an argument about Hermsen. So, Hermsen was present in February 2019 during the panel discussion where Lindsay, in her words in her deposition, stood up for Lee, where Lindsay said, I said she was always professional. You put that together with Lee saying, somebody on the panel told me this, and you could infer Hermsen's knowledge. Let's not go there, because they're not making that argument. Right. I just think you overstated your case when you said know what. Well, and Hermsen's deposition specifically states he didn't know who told him. Right, but there is good circumstantial evidence that someone might credit to disbelieve Hermsen. So, well, okay, let's just focus on Donner. The undisputed evidence here is that Donner didn't know. We have a sworn affidavit from her. Plaintiff makes much of the fact that it's an affidavit, not deposition testimony, but it was plaintiff's choice to ask those questions or not in the deposition, and of course, affidavits are explicitly allowed by rule to be used, and that's exactly what occurred here. There's been no challenge to her sworn affidavit. The circumstantial evidence plaintiff relies on is one that Donner allegedly treated her poorly from the beginning, but as this court has already noted, the record is replete with evidence that she was not particularly nice to anyone. But she had been nice to plaintiff before. She and, the plaintiff and Donner had, Lindsay and Donner had, according to Lindsay, had a good relationship before. So the record shows that there were two occasions that Lindsay and Donner and other individuals interacted before her hire. One was getting coffee, one was at a party where everybody was present. The record shows that Donner was nice to everybody in those occasions, not just Lindsay. Then the record shows that after she became the boss, after she was put in charge, her leadership style, and that's over and over and over in the record, was extremely different than what they were used to. She walked out of meetings. She cut people off. One person described her as making her phone more of a priority than the person sitting in front of her. Employees complained that she was rude. Employees complained that she didn't say hello. She refused to say hello to them. These are the exact things that Lindsay complains of. The fact that Donner treated Lindsay the same way she treated all of her other employees, both before and after her fire, sorry, after her hire, is no evidence whatsoever that she knew anything about the protected activity. And in light of her sworn testimony that she didn't know anything about the charges or the fact that Lindsay provided information to Lee until after the termination, that circumstantial evidence isn't enough. Donner, or Lindsay also... It could be. It could be. It could be enough. I don't think in light of the record... So you're saying whatever she says in her sworn affidavit, we must accept unless we have direct evidence that she's lying? Or circumstantial evidence. I thought you were saying there's no circumstantial evidence. No, this evidence, the circumstantial evidence plaintiff relies on, Ms. Lindsay relies on, doesn't get you there. It is not circumstantial evidence. Treating somebody the same as you treat everybody else is certainly not circumstantial evidence that you have knowledge they engaged in protected activity. What about his argument that ultimately goes to pretext also, which is just that the reasons that she gave were false? Okay, so the reasons for the termination stemmed from the investigation into a complaint by employee Carlos Vigil. That complaint, Donner had nothing to do with the investigation of that complaint. She was not involved in any way at all. The findings of that complaint were made by Caldwell, Joe Caldwell, a human resources partner. Caldwell is the one who investigated it, and the record is replete with... The whole investigation is in there. It's over 52 pages long. Caldwell made the findings, and Caldwell made the recommendation. The record shows that Caldwell even actually typed up the termination letter and gave it to Donner for review. Donner's undisputed testimony is that she relied on that investigation, that she relied on those findings, that she conferred with her supervisor, Bernard McCune, about whether the termination recommendation should be accepted or not. It is undisputed that McCune knew nothing of the protected activity, and that based on the investigation findings by Caldwell, who did not know of the protected activity, that's undisputed as well. She decided to accept the termination recommendation. There is no evidence, so the plaintiff makes much of this idea that the three grounds for The first ground, the overpayment of Byron O'Bailey, there is no evidence that at the time that that decision was made, Caldwell, who made it, didn't believe it was true. In fact, she did. The evidence in the record, her sworn testimony in the record, is that she did believe that Lindsey overpaid O'Bailey for work he didn't do. To come to that conclusion, she reasonably relied on a pivot table, which was created by a financial analyst in the district, that demonstrated, that showed how he was paid, and that pivot table is also in the record, part of the investigation report, that showed that he was a salaried employee who got paid additionally for working career services when he wasn't actually working there. She explains that exactly how that goes in her sworn affidavit, Caldwell does. The fact that now, during discovery, the parties learned that maybe that was an error, maybe her conclusion was wrong, does not get them there, because the standard is not, did we learn two years after the termination that maybe that one finding was wrong? That's not the standard. The standard is, what did the decision maker at the time reasonably believe? The evidence in the record shows us that Caldwell, the person who made that finding, reasonably believed that Lindsey overpaid O'Bailey. And then Caldwell, just wondering if Caldwell interviewed Lindsey? Caldwell interviewed Lindsey, gave her interview notes to Lindsey, allowed Lindsey to make notes on them and give them back. So that's part of the record as well. She also interviewed numerous other people. She also made two other findings. Let me ask about the overpayment. Was the overpaid employee required to refund the overpayment? What the record shows is that Caldwell was not aware if he was or not. It does not show whether he ultimately was or not. Caldwell was not in charge of collecting that overpayment. Caldwell was a human resources partner, not finances. So there had never been an adversary proceeding, essentially, with respect to that overpayment until the Lindsey termination. Not to my knowledge. It's not part of the record and I don't believe that was ever actually delved into, other than a plaintiff asked Caldwell during her deposition, Caldwell said she didn't know. I think she said maybe not to her knowledge or I don't know, I'm not in charge of that. Something along those lines. But regardless, the problem was that the record shows, the investigation showed that Lindsey approved that payment, that Lindsey told him where to put the funds. That's what's in the record before you. Is that based upon her interview of Lindsey, what Lindsey told her and what O'Bailey, who she also interviewed, told her was that he was getting paid from this account when he wasn't working for this department. And that Lindsey is the person that told him to do that. That's what Lindsey believed in 2019 when she made these findings. The fact that in 2021 or 22, during a deposition where we were looking at all this, a financial analyst said, oh, I don't think that's right, doesn't change, doesn't somehow make pretext. It doesn't somehow make a circumstantial evidence argument that Caldwell knew or more specifically, more importantly, that Donner knew that Lindsey had engaged in protected activity. That's a leap that amounts to nothing more than pure speculation and subjective belief, which is not enough to overcome summary judgment under the law in this court. The other issue is in that investigation, there are two other grounds for termination. There are two other grounds that Caldwell determined she should be terminated. One was that she acted unprofessionally, including showing favoritism to employees and, quote, screaming and yelling, unquote, at Vigil in meetings. And that finding was based not only on Vigil's statements, but on the statements of numerous other witnesses who were interviewed. That was another grounds for termination. That hasn't even been disputed by Ms. Lindsey in this matter. The third ground was that she interfered with the hiring process for one of her subordinates. And that is actually undisputed, too, although Lindsey tries to minimize her action. It is that the record shows she inappropriately tried to influence a hiring panel to hire her preferred candidate, significant given the hiring panel was composed mainly of her subordinate employees. So the fact that she tried to influence her subordinates to hire the person their boss preferred, Ms. Caldwell determined that that could be intimidating and could have influenced them to pick not the best candidate, but the candidate they knew their boss was. That was the third ground. Sorry. How should we be thinking about the temporal proximity between Ms. Lindsey's protected activity and her termination? So Ms. Lindsey's protected activity actually takes place in April or February, first of all. It does not take place in July or anywhere near the date of her termination. Moreover, temporal proximity, and it's well established in this court as well as many other circuits, that temporal proximity alone doesn't get you the causation if there is no knowledge of the protected activity. There's an abundance of cases cited in our brief as well as in the district court's opinion to that effect. You can't have temporal proximity to establish causation when the decision maker didn't know of any protected activity. That's well established case law both in this court and in many other circuits, and again, that is in our brief. So temporal proximity fails for that alone. The pretext arguments, we don't even need to get to pretext. In fact, the district court noted, this fails on the causation element. We don't even need to get to pretext, but if we did, it fails for the same reasons. You can't have pretext for retaliation if you didn't know the person engaged in protected activity. But we're looking at the pretext evidence to supply the third element, right? We're looking at the pretext evidence as the basis for causation here, right? That is certainly what plaintiffs argue, yeah. We can do that. I haven't seen case law that says you cannot, no. So I think you can, but regardless, it still fails. Because if you don't get to causation, you don't get to pretext because the evidence is the same. And there is no circumstantial evidence that Donner, the ultimate decision maker here, knew that Lindsay engaged in protected activity. It's just not there. That is why we are going to ask this court to affirm the decision of the district court in this case. Thank you, counsel. If counsel have any remaining time? Thank you. Jason, so we've had counsel excused. We're going to take a break now. Why don't I guarantee 15 minutes anyway, and just stand by. We'll get back in a second. I think we've got another matter we've got to address.